49 CCPA
**Application of DAVID CRYSTAL, INC.**
**(Izod Ltd., Assignee, Substituted)**
**Patent Appeal No. 6699.**

United States Court of Customs and Patent Appeals.
Dec. 18, 1961.

Arthur H. Seidel, Philadelphia, Pa., for appellant.

Clarence W. Moore, Washington, D. C., for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

MARTIN, Judge.

This is an appeal from a decision of the Trademark Trial and Appeal Board, 125 USPQ 423, affirming the examiner's refusal to allow registration of a mark on the Principal Register.

The mark sought to be registered is depicted below and consists of the two parallel colored bands, the upper band red and the lower blue as shown by the vertical and horizontal lines in the drawing, when used as shown in connection with "Men's Ribbed Socks."

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

The application states that this alleged trademark was first used in commerce in April, 1956. An affidavit of Vincent Draddy, president of David Crystal, Inc., states that 4,500 dozen pairs of socks with red and blue bands were sold by appellant at a retail sales price of about $78,750 between April, 1956, and September, 1957, with an additional 4,200 dozen with a retail value of about $73,500 sold thereafter through the end of July, 1958.

The record includes 12 affidavits from retail store presidents and owners, buyers for retail stores, and two men's fashion editors, all expressing opinions in various ways that the "spaced colored bands at the top"[1] indicate to those associated with the retail trade and to the purchasing public that the socks are the product of Izod and/or David Crystal.

The record also includes two advertisements which depict appellant's socks with words and an illustration. These advertisements are stated in the Drady affidavit to be "characteristic of the way in which our socks are advertised." One advertisement contains a sketch of a pair of ribbed, banded socks with the following words below the sketch:

"Sport Socks
by Izod of cotton, wool and nylon;
cushion sole; one size fits all; in
white colored top stripings,
2.50"

The other advertisement comprises a photograph showing among several other items a single sock on a foot and ankle form with a second sock stuffed in the ankle of the first so that the bands of both are visible. To the left of the photograph are the following words:

"* * * IZOD CREW SOX * * * Cushion sole wool Olympic sox with red and blue blazer tops. By IZOD, importers of the famous La Coste Golf Shirt. $2.50 * *"

The examiner in his final refusal to register was of the opinion that "the matter presented for registration is nothing more than mere ornamentation and, as such, is not registrable as a trademark."

The board affirmed the examiner, stating that "the design in question would be regarded by purchasers only as an ornamental feature of applicant's socks rather than as an indication of origin thereof." The board stated that the advertisements "feature the word mark 'IZOD' and in no way emphasize or otherwise promote as a trademark the red and blue band design appearing thereon." With regard to the affidavits, the board stated that the record contains nothing to show that purchasers have come to know and recognize the design as a trademark for appellant's socks and that the statements in this regard by retailers of appellant's goods "being mere conclusions, are insufficient as proof thereof."

Merely because a design is ornamental does not preclude it from becoming a valid trademark capable of distinguishing the goods upon which it is placed. In re Todd Co., Inc., 290 F.2d 597, 48 CCPA 1009, 129 USPQ 408. But unless the design is of such nature that its distinctiveness is obvious, convincing evidence must be forthcoming to prove that in fact the purchasing public does recognize the design as a trademark which identifies the source of the goods. The affidavits introduced in evidence in this case do not fulfill this requirement.

The affidavit of the president of the applicant-company comes from an interested party and we give it little weight. None of the other affidavits specify that the bands are red and blue which is an important factor of the alleged trademark. None of them are from the purchasing public except in the case of two of the affiants who wear the socks and who are buyers for stores in which the socks are sold.

At best, these affidavits merely assert that affiants believe that what amounts to a very small portion of the purchasing public identify these socks as those of applicant because of colored bands. For

1. Eight of the 12 affidavits recite this particular phrase.

this most inadequate proof, applicant asks us to give it the exclusive right to use red and blue bands on men's white, ribbed socks—that we cannot do.

For the above reasons we affirm the decision of the Trademark Trial and Appeal Board.

Affirmed.