58 CCPA

**MATSUSHITA ELECTRIC INDUSTRIAL CO., Ltd., Appellant,**

v.

**NATIONAL STEEL CONSTRUCTION CO., Appellee.**

**Patent Appeal No. 8527.**

United States Court of Customs and Patent Appeals.

June 10, 1971.

Donald A. Gardiner, Jr. (Smith, Michael, Bradford & Gardiner), Arlington, Va., W. Douglas Carothers, Jr. (Carothers & Carothers), Pittsburgh, Pa., attorneys of record, for appellant.

Orland M. Christensen, Gordon R. Sanborn (Christensen, Sanborn, Matthews), Seattle, Wash., attorneys of record, for appellee.

Before RICH, ALMOND, BALDWIN, LANE, Judges, and LANDIS, Judge, United States Customs Court, sitting by designation.

RICH, Judge.

This is an appeal from the decision of the Patent Office Trademark Trial and Appeal Board in cancellation proceeding No. 8,751 granting appellee's petition to cancel three registrations, Nos. 754,002, 769,430, and 769,858, of various forms of the trademark NATIONAL. The goods named in all three registrations are: portable electric space heaters, portable electric percolators, portable electric rice boilers, portable electric bakers, and portable electric blenders.

The board's opinion herein is published in full at 158 USPQ 468. That opinion, however, refers to and relies on the opinion in a companion cancellation, No. 8,562, heard on the same record, published at 158 USPQ 464. Familiarity with these opinions will be assumed.

The three registrations here involved are for composite word and design marks. The marks of registrations No. 754,002 and No. 769,858 are illustrated in the last-mentioned opinion wherein "Mark A" is the mark of '002 and "Mark B" is the mark of '858. The mark of '430 is designated "Mark C" in the opinion below herein and differs from the other two in that the dominant word portion of the mark, which is "NATIONAL" in the other two, is the Japanese written language equivalent written in katakana characters, the design portion of Mark C being otherwise like Mark A.

It is noted, with respect to the design features of the marks, that appellant does not rely on them in arguing lack of a likelihood of confusion, etc., but, on the contrary, seems to concede legal identity between its marks and appellee's mark NATIONAL, registered to it in 1951 for automatic electric water heaters, Reg. No. 539,424, and in 1956 for portable air conditioners, Reg. No. 626,970. Appellee has also alleged, and the board found, prior use of NATIONAL on radiant electric heaters and other related products.

It is not questioned by appellant that appellee is the prior user.

With respect to Reg. No. 769,430, wherein the dominant feature of the mark is the Japanese equivalent of the word NATIONAL, the board held it to be well established that foreign words may not be registered if the English equivalent has been previously used on or registered for products which might reasonably be assumed to come from the same source, citing Ex parte Odol-Werke Wein Gesellschaft M.B.H., 111 USPQ 286 (Commr.1956), and cases cited therein. There registration was refused to "CHAT NOIR" for eau de cologne in view of the prior registration of the English equivalent words "Black Cat" for perfumes and toilet waters, inter alia. Appellant has not contested this principle of law. All three registrations have been dealt with in its brief on the same basis and we shall do the same.

The board held that the marks were in legal effect the same and the parties' goods were such that purchasers and users might well believe that they came from the same source when marked with the same mark.

The principal argument appellant makes here appears to be the same it made below, that NATIONAL is such a "weak" and "watered" mark that appellee's protection should not be extended beyond the specific goods on which appellee established use of the mark. The board rejected this argument and so do we. Even though a mark may be "weak" in the sense of being a common word in common use as a trademark, it is entitled to be protected sufficiently to prevent confusion as to source from arising. 15 U.S.C. 1052(d). In a similar situation involving the mark National Judge Kirkpatrick protected the mark in National Drying Machinery Co. v. Ackoff, 129 F.Supp. 389 (D.C., E.D.Pa. 1955), affirmed 228 F.2d 349, (3d Cir. 1955), wherein he said:

It is an impossible task to draw from the precedents a rule which will fit every case as it arises. I can only say that, from all the evidence, I have reached the conclusion that the manufacture of hot air hand dryers is a field so closely connected with what the plaintiff is doing at the present time [large, expensive, industrial drying machine manufacture] that it can be considered an area of normal expansion of the plaintiff's business.

It must be conceded that "National" is almost as weak a mark as can be found. However, it is quite likely that a purchaser would have some difficulty in explaining which product he desired if he should try to identify it by its trade name. He would have to ask for prices on a "National" dryer as distinguished from a "National Dryer" dryer or vice versa. *If a trade mark, however weak, is to retain any validity, a manufacturer must be protected against a competitior's placing his customers in such a dilemma.* [Emphasis ours.]

Neither trademarks nor the public are adequately protected unless decisions in cases of this kind are based on a realistic appraisal of the likelihood of purchasers or prospective purchasers being confused as to source regardless of theo-retical "weakness" of a mark. We think the board made such an appraisal and reached the right conclusion. We have considered all of appellant's arguments and precedents but they fail to persuade us of error.

The decision of the board is affirmed.

Affirmed.